I don't know how that's pronounced. For the appellant, Miss Pavlik, and for the appellee, Mr. Tai, I need to advise you that Justice Kinect is on this panel, but came up ill this morning.     Thank you. Thank you. Thank you. Thank you. And so he will be listening to the oral arguments on the tape tomorrow. You may proceed. Good morning, Your Honors. May it please the Court. The facts in this case, which I believe are not in dispute, are as follows.  The farm consisted of approximately 80 acres, 78 which were tillable, and 2 which were not, and had a house located on them. The farm had been in the family for over 100 years, and in her will, Mrs. Chappell gave the farm, made a specific request of the farm with a one-half life estate to each of her two children, Milo Chappell and Tony Gurrell, with the remainder to Mrs. Chappell's grandchildren. At the time of Mrs. Chappell's death, Milo Chappell had no children or grandchildren, and he still does not. Mrs. Gurrell had three children and six grandchildren. She now has three children and eight grandchildren. So they would be the remainder beneficiaries of the farm after the life estates. Milo Chappell was appointed executor of the estate in May, on May 12th of 2010. His attorney was T.G. Boland. On May 17th of 2010, T.G. Boland sent a letter to the heirs of the estate saying that certain debts and expenses needed to be paid and that he would be in touch with them shortly regarding how those matters would be handled. Sometime in June of 2010, Milo instructed his attorney to cease all communication with the other beneficiaries, particularly with Tony Gurrell. Tony Gurrell sensed that something might not be right, and she filed a petition to terminate independent administration on October 6th, 2010. The next day, October 7th, 2010, Milo Chappell closed on the sale of the family farm. Milo did not inform any of the other beneficiaries of the legacies of the specific request that he intended to sell the farm. He did not obtain their consent. He did not attempt any other ways of obtaining funds for the estate. He did not attempt to sell the two acres with the house on it alone. He did not attempt any other efforts at all, he stated in his testimony, to obtain money for the estate. Ultimately, this comes down to, from your standpoint, the will provision that provides that the executor can sell real estate without order of the court, versus the statutory provision that requires if there is to be the sale of real estate that there is a specific legacy that the executor obtain consent of the legacy. Correct? That is one of my primary points. The second point would be that he breached his fiduciary duty regardless Let's just take that up then. Was that alleged in a petition? In the petition to remove, either in that or in any subsequent pleading or amendment, was anything other than the failure to obtain the consent that the legacy alleged as a basis for the petition to remove? Breaches of fiduciary duty were alleged, yes. Going back to the initial premise for the basis for the request to remove, let's say that that is a requirement that the executor obtain the consent of the legacy. If the legacy had indicated no, I'm not going to consent, what would then happen? Wouldn't it be that the executor would seek permission or authorization from the court for sale of the real estate? That wouldn't be the end of it there, right? No. If the executor believed that it needed to be sold to pay debts or for whatever reason, he would seek permission from the court. Then aren't we at that point where the will says no order of the court is needed for sale of real estate? That's a general power of sale which we maintain does not override the rules regarding the specific request. Do you have any case authority to support that? There's no case authority either way on this statute. However, in an analogous argument, all the provisions and all the case law that has come down regarding the power of sale for a dependent administration where there are debts and it's necessary has specifically said that court approval is necessary and that only the minimum amount of property possible to pay the debts and expenses is what should be sold. There's a case cited in my brief where it specifically said debts needed to be paid, the court authorized the sale of 20 acres but not the sale of another 80 acres. So even though there is no case law for independent, the analogous cases in dependent show that the legislature clearly intended to preserve requests, specific requests for real estate and that only the minimum amount of property would be sold. In that provision of the statute that requires or indicates consent of the legatee as necessary, does it indicate any remedy or consequence for the failure to do so? No, it does not. But my position and our position would be that all breaches of fiduciary duty and all violations of the statute have damages. The executor is liable for damages if damages were done to the estate and also is susceptible to be removed for mismanagement of the estate and for other good cause. So any failure to abide by the statutory provision would result in removal of the representative? Perhaps not any violation of the entire probate act, but in this case the specific request of a long-standing family farm, which he knew they wanted to keep and which he intentionally hid from them and did behind their backs so that they would have no opportunity to have any other action to purchase it themselves or to take any other action. Yes, that would be removal of the executor. Hasn't the horse kind of left the barn? Unfortunately, on this farm it has. However, damages. The horse has not left the barn on damages. The cases are cited in a brief that if Mrs. Gorel can prove that the farm is worth more today than it was when it was sold, Milo Chapel would be liable for those damages. So even though unfortunately she cannot get the farm back and she did try to get the farm back by calling the purchaser, who was not interested in reselling it, she and her children and grandchildren can at least be made whole monetarily with damages. Wasn't there an acknowledgment in the trial court that the farm was sold for fair value? That is not the measure of damages. Again, the law and the cases are cited in my brief. The measure of damages also includes future damages, which would include the value of the property at the time of trial. So if the farm is worth more today, which we allege is worth much more today, the executive would be liable for those damages and loss of profits from then until now. It seems to me that the real gravamen of the complaint is that it's not about the money. This is a centennial farm. It's been in the family for over 100 years. To a certain extent, it's as much emotional connection with the farm than it is financial. That, yes, is a very big part of the case. However, there are significant financial damages as well. Well, has farmland inflated so much in the last couple of years that that's going to be a big number? It's been four years already since Mrs. Sheckle's death, although it's been three and a half years since the sale of the farm. And yes, farmland has gone up considerably every year in the last five or six years. Okay. So you're familiar with the facts, so I'll stop my summary of the facts, although I will point out again that as part of the breach of fiduciary duty and as part of the reason that he did not try to sell the house with the two heirs, Milo Chapel was intending to benefit one of the heirs, who was Jeremy Gurek. And that is all tied in with his selling the farm versus doing anything else, including the house with the two heirs. He stated that he did not try to sell that because he wanted to benefit Jeremy Gurek. He has allowed Jeremy Gurek to live in that home rent-free for what will be four years and approximately two weeks. In addition, the estate has paid taxes and insurance on that house. He has taken no action whatsoever to change anything with that house, which clearly violates his duty of impartiality and clearly was part of the reason that he sold the 78 acres versus the two acres, which should have been more than sufficient to pay any debts and expenses of the estate. I want to be clear on your position here in regards to the standard of review. You've indicated that whether or not the trial court appropriately found that there was an exception to the statutory provision requiring consent is and whether or not the petition for removal of the executor should have been granted that as a manifest way standard. Here, I was a little confused in reading the court's order. The written order as to what it actually found in regards to this consent provision. Is it your position that the trial court found that consent was required, but that even though the executor failed to obtain the consent, it did not rise to the level to justify removal of the executor? Correct, with one exception, and I believe that the trial court's factual conclusion was based on a legal error. He did find that the statute controlled and that consent was required, but then he found an exception to that consent and said that no, in fact, it wasn't required in this case because it was necessary to pay the debts and expenses. There is no such language in the statute, there is no such case law providing any exception, and there is no need for exceptions, which I stated in the brief, because you can always go ask the court to sell the property. There was absolutely no rush whatsoever to sell this property. To date, the claims have still not been paid years later. There was no hurry to run out and sell this property and get these claims paid. The executor had ample time to consult with the legatees and if their consent was not forthcoming, to request permission from the court. Why has it stretched out so long? Your client had a claim against the estate. Wasn't there ever a request made to have that claim adjudicated? Why has it gone on this long? Well, in large part because of docket management. If you don't notice, there are several hearings throughout and they are many, many months apart. And why is that? There was a hearing on the petition for removal and then a subsequent hearing wasn't set for another 14 months? Correct. The subsequent hearing was to give the executor an opportunity to respond. And I don't remember the details, but in large part we had one hearing set and then something happened and we had to reset it another few months later. It was not delay on our part and it wasn't, as I recall, particularly delay on the other side's part, but really just a question of when would it be before the court. All right, so in summary, what the executor did is he violated the statute, which Judge Cordell ruled. He, beyond that, with bad faith and bad intention, sold the farm out from under them, behind their backs,   He had a duty to do that. He had a duty to inform the beneficiaries of all material facts regarding the estate administration. He did not do so. He instructed his attorney not to do so. He had a duty to deal fairly with the beneficiaries. He did not. He had a duty to deal impartially with the beneficiaries, which he did not. He clearly favored Jeremy Gorel both in the sale and in the rental arrangement. Once these objections were made to the account that was filed with the court, case law clearly says that the burden of proof shifts to the executor to prove that his conduct was beyond reproach in the language of the case law. He clearly did not prove that his conduct was beyond reproach and therefore it is our position that he should be removed and then subsequently subject to damages. Thank you. You'll have additional time on rebuttal. Mr. Tye. Your Honors, I'd like to start by pointing out that the facts of this case really aren't that extraordinary. We had an estate with a single principal asset and the testator clearly anticipated that it might have to be sold because she executed a codicil to give her executor the power to sell it. She trusted her executor to make that decision or she wouldn't have made him the executor. I cited the case in my brief but clearly the petitioner would have done things differently and wouldn't have sold it and doesn't like the fact that this executor is the executor. Well, that's not the beneficiary's choice to make. It's the testator's choice to make as the executor. The executor gets to make the choices and just because they don't like it's not sufficient reason to remove him. That brings us to the law issue. We've got on the one hand the statute that says specifically bequeathed I think that's the right way to say it, property can't be sold without the consent of the heirs. But it also at the bottom says except to the extent these powers are inconsistent with the will. So in this case we had a will that said he could sell it without legal court without petitioning the court. And that's inconsistent with what's in the statute. So his lawyers told him we think you can sell it. We don't think you need consent. We don't think you have to petition the court. We think you can just sell it because the testator gave you that power. If he wanted you to have the power, there it is. That's a question of law. It's been noted there's no cases going one way or the other on that. It is a little unclear exactly what the trial court found as far as that goes whether or not notice was required or consent was required. The way I interpreted the trial court's ruling was I think that the statute trumped the power of the will and you should have come to me. But it wasn't no harm no foul. I would have let you do it anyway. The estate had more bills than it had cash to pay it. So that's what you do is you sell the asset. You could have rented the ground and paid the bills. Well, there's a bajillion things he could have done. Again, that goes back to the point that the testator chose him to be the executor because she trusted him to make the decisions to handle the estate to give him the power to sell the property. And just because the other beneficiaries would have preferred something differently done, that's not a basis for removing him. He was acting within his authority and he hasn't stolen anything. It's all still there. He just converted assets from one form to another. What about the free rental of the house? Well, his testimony was or the evidence was that he had already been living there. This is Petitioner's son with his family. And that this is a quid pro quo. He's allowed to live there in exchange for caretaking the property. So the estate is getting some consideration for letting him live there and that it's upkeeping the property. And he considers that sufficient consideration. And the trial court heard all this stuff and after three years or however long this was in the court still decided that what he'd done just really wasn't that unremarkable. It wasn't anything that deserved removing him as the executor. That's really it, Your Honor. It's not that complicated. He had the power to do it. Yet the statute can be interpreted to give him the power to sell under the will because the will prompts or not. If it does, then he had the power and he didn't do anything wrong. If not, the trial court heard everything and said, well even if this was a technical violation, I still don't think this rises to the level of removing you as executor. I think that can be affirmed on either basis. All these other points. The petition is attached to the appellant's brief. So you can look at it in the appendix. When I looked at it, the only thing I saw alleged as a breach of fishery duty was selling the farmland. But again, the court heard all this other stuff about the sign and the claims. And to answer why the claims haven't been paid, well, everything's in trust now because of all the litigation that's going on. Everything's tied up because the petitioner is suing everybody. Counsel, the court ruled from the bench on the petition to remove after the second hearing, right? Yeah. And then asked that a written order be prepared. And then that didn't happen for another 11 months, right? Well, Your Honor, I was not involved in this case at the trial level. So I can't answer why it took so long. I just don't know. Unless Your Honor has any more questions, I think I've made my position. I would request that the trial court be affirmed. It's not against the manifesto of the evidence. Thank you. I'd like to address Justice Harris's last comment. What happened was, during those 11 months, there were serious settlement negotiations and we came very, very close. We just were not able to reach settlement. In addition, we were unable to agree on an order. John Robinson was the attorney involved at that time. He had a proposed order. We could not come to an agreement on that until we had to schedule another hearing to have Judge Correale issue his actual order on that matter. So that's what we did. We really thought we were going to get it settled during those 11 months. Unfortunately, we didn't. As counsel just said, the executor could have done a bajillion things. He didn't try one of them. And our claim is that the reason he didn't try any of them is evidenced by a letter that he sent to the beneficiaries, which is in the record, a month after the sale of the farm proposing to divide up the cash proceeds. Milo didn't want to get $5,000 or $8,000 a year for the rest of his life off this property. And that's all he would get. And then the rest of it would go to his nieces and nephews. He wanted cash. And in that proposal, he wanted $175,000 of cash out of proceeds of $540,000 for his one-half life estate as a 58-year-old man. So that's where the bad faith and the true motivation comes in. He was looking for a cash payment, which he was not entitled to, which he thought he was going to be able to do by selling this property, which is why he didn't tell anyone and did it behind their backs. As far as not having stolen anything, has he technically stolen anything? No, he has not. What have they lost on? Thousands and thousands of dollars of increase in the value of the farmland. As far as paying claims, yes, the funds are frozen, but they can be paid with order of the court. Conveniently, he did ask the court to pay the taxes and insurance on the house that Jeremy Gurel is living in rent-free, but he didn't bother to address any of the other claims, which were apparently so urgent that the farm had to be sold. As far as caretaking the property, I don't know about your homes. I'd be delighted to live in my home rent-free, have the owner pay the taxes and the insurance, and just responsible for maintaining the property. I fail to see how that would remotely be fair consideration for living somewhere rent-free. Clearly that wasn't included as a basis for relief in the petition, correct? No, but failing to sell the house as opposed to the 78 acres was included and that was done with the sole intent of benefiting Jeremy Gurel. So based on these, both the legal aspect, I believe that Judge Correale was incorrect in his application of the law, and as far as his no harm, no foul saying that even if they had come to the court, he would have approved that, that's not what he said, and there would have been much more evidence at hand as far as what he would have approved. Tony Gurel or the other beneficiaries could have made an offer to purchase the property. They could have proposed any one or more of these other bajillion things that could have been done. Just to say in a vacuum that he would have approved the sale of the property, first of all, that's not what he said, and second of all, I don't think that's correct. Thank you.